Trenton R. Kashima (CA SBN No. 291405)
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389
tkashima@bryson.com

*Attorney for Plaintiff*

*(Additional Counsel listed on Signature Page)*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YOLANDA PITRE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DERMARITE INDUSTRIES, LLC,<br><br>Defendant. | Case No. __________<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This class action seeks to remedy the deceptive, unfair, and unlawful business practices of Defendant DermaRite Industries, LLC ("Defendant" or "DermaRite") with respect to the manufacturing, marketing, and sale of its skin care, wound care, nutritional, and infection control products (the "Products")[1] throughout the United States and California.

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and failing to disclose on its packaging and in its advertising that the Products are contaminated with, or at risk of being contaminated with, a dangerous microbial contamination identified as *Burkholderia cepacia* complex ("BCC").

3. As a result of Defendant's deceptive practices, consumers were led to believe they were purchasing safe and effective products for skin and wound care. In reality, they were sold products contaminated with BCC, a group of bacteria that can cause serious and life-threatening adverse health consequences, including respiratory infections and sepsis, particularly in vulnerable individuals.

4. Defendant knew or should have known of this contamination. In fact, after the widespread sale of the contaminated Products, Defendant issued a voluntary recall on August 8, 2025,

[1] The Products include, but are not limited to, the following: 3-N-1 Cleansing Foam 7.5 oz.; 4-N-1 Wash Cream 4oz; Clean-N-Free Bottle 7.5oz.; DermaCerin (lg. jar) 16oz.; DermaCerin tubes 3.75oz.; DermaDaily lotion 4oz.; DermaDaily lotion 7.5oz.; DermaDaily lotion 1000 ml. bag-n-box; DermaFungal 3.75oz. tube; DermaFungal 5g packets; DermaKleen 1000ml. bag-n-box; DermaKleen 7.5oz.; DermaKleen 800ml. bag-n-box; DermaKlenz 8oz.; DermaKlenz Spray 4oz.; DermaMed Ointment 3.75oz. tube; DermaRain 16oz.; DermaRain 7.5oz.; DermaRain 800ml. bag-n-box; DermaSarra 7.5oz; DermaSyn 3oz. tube; Derma Vantage 2oz. tube; Derma Vantage lotion 7.5oz; Derma Vantage lotion 1000ml. bag-n-box; Derma Vera 800ml. bag-n-box; Derma Vera 1000ml. bag-n-box; Derma Vera 4oz; Derma Vera 7.5oz. bottle; Derma Vera Gallon; GelRite 1000ml; GelRite 16oz.; GelRite 4oz.; GelRite 800ml.; Hand-E-Foam 1000ml.; Hand-E-Foam 8oz.; KleenFoam 1000ml.; Lantiseptic Daily Care Skin Therapy 14oz Jar; Lantiseptic Dry Skin Therapy 4oz Tube; Lantiseptic Dry Skin Therapy 5g Packets; Lantiseptic Skin Protectant 4.5oz Jar; Lantiseptic Skin Protectant 12oz Jar; Lantiseptic Skin Protectant 14.2g Packets; Lantiseptic Skin Protectant 4oz Tube; Lantiseptic Skin Protectant 5g Packets; LubriSilk lotion, 16oz; Mckesson Skin Protectant 4oz Tube; Mckesson Skin Protectant 5g Packets; PeriFresh (Perineal Cleanser) 7.5oz.; PeriFresh (Perineal Cleanser) gallons w/fragrance; PeriGiene 7.5oz.; PeriGuard 3.5oz tube; PeriGuard 7oz tubes; PeriGuard ointment packets 5g; Renew 8oz shampoo/body wash; Renew Dimethicone Skin Protectant packets 5g; Renew Full-Body foaming cleanser 8oz; Renew PeriProtect 4oz tube; Renew Skin Protectant w/ dimethicone; Renew Skin Repair 4oz tube; Renew Skin Repair 5g packets; Renew Skin Repair 800mL; San-E-Foam 1000ml.; TotalBath 1000ml. bag-n-box; TotalBath 7.5oz.; TotalBath 800ml. bag-n-box; TotalBath gallon; TotalFoam 1000ml.; UltraSure Deodorant Pump Spray 4 oz.; and Whirlbath Balance gallons.

followed by an expanded recall on August 27, 2025 (the "Recall"). However, this after-the-fact Recall is inadequate and fails to fully compensate consumers for the economic losses they suffered from purchasing worthless and unsafe Products.

5. Plaintiff and Class Members reasonably relied on Defendant's labeling and marketing, which omitted the presence of BCC. The existence of a dangerous bacterial contaminant in products intended for skin and wound care is a material fact for a reasonable consumer. Had Plaintiff and Class Members known the truth—that the Products were contaminated with BCC—they would not have purchased them or would have paid substantially less for them.

6. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain because the Products they received are worthless, have no value, and are unsafe for their intended use. Alternatively, Plaintiff and Class Members paid a substantial price premium for the Products attributable to Defendant's false and misleading representations of safety and quality.

7. Plaintiff Yolanda Pitre, on behalf of herself and a class of all others similarly situated in California, brings this action to hold DermaRite accountable for its unlawful practices, to obtain redress for the economic injuries she and the Class have suffered, and to enjoin DermaRite from continuing its deceptive conduct.

## PARTIES

### I. Plaintiff

8. Plaintiff Yolanda Pitre is an individual and a citizen of the State of California, residing in San Mateo, California.

9. In or around October 2024, which is within the applicable statute of limitations period (the "Class Period"), Plaintiff purchased a 7.5 oz bottle of DermaDaily lotion from a brick-and-mortar Target in San Mateo, California for between $10-20. In purchasing the Product, Plaintiff saw, read, and reasonably relied on Defendant's packaging, labeling, and marketing, which represented the Products as safe for skin and wound care and failed to disclose that the Products contained, or were at risk of containing, BCC.

10. Had Defendant disclosed that the Products were contaminated with BCC, Plaintiff would not have purchased the Products or would have paid substantially less for them. The Products

Plaintiff received were worthless, or worth significantly less than what she paid, because they are contaminated with harmful bacterium and are not safe for their intended use. Accordingly, Plaintiff has suffered injury-in-fact and lost money as a direct result of Defendant's unlawful and deceptive conduct.

**II. Defendant**

11. Defendant DermaRite Industries, LLC is a New Jersey limited liability company with its principal place of business in North Bergen, New Jersey.

12. Defendant manufactures, markets, advertises, distributes, and sells the Products throughout the United States, including within the State of California. Defendant created and/or authorized the false, misleading, and deceptive advertising, packaging, and labeling for its Products as alleged throughout this Complaint.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because: (1) this is a class action in which the number of members of the proposed class is not less than 100; (2) the aggregated claims of the class members exceed the sum or value of $5,000,000, exclusive of interest and costs; and (3) minimal diversity exists, as Plaintiff Yolanda Pitre is a citizen of the State of California and Defendant DermaRite Industries, LLC is a citizen of the State of New Jersey.

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

15. This Court has personal jurisdiction over Defendant because Defendant operates, conducts, and engages in substantial business in the State of California and within this District. Defendant has purposefully availed itself of the laws and markets of California by marketing, advertising, distributing, and selling its Products to consumers throughout the state, including in this District, and by deriving substantial revenue from such sales. Defendant's unlawful and deceptive conduct as alleged herein occurred within and was directed at this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

Plaintiff resides in this District, purchased and used the defective Products in this District, and suffered economic injury in this District as a direct result of Defendant's wrongful conduct.

## COMMON FACTUAL ALLEGATIONS

17. Defendant manufactures, markets, advertises, and sells a wide range of skin care, wound care, nutritional, and infection control products, including the Products at issue in this case, which are listed in Footnote 1, *supra*.

### I. DermaRite Markets Itself as a Trusted Manufacturer of Safe Products

18. Defendant DermaRite is a large and sophisticated corporation that has been in the business of producing, manufacturing, and distributing skin care and related products for over 25 years. Defendant has used its longevity and market presence to cultivate an image as a trustworthy and reliable source for products used in sensitive healthcare and personal care settings.

19. Consumers have become increasingly concerned about the safety and ingredients of the products they apply to their skin, particularly when used for wound care or on compromised skin. Defendant capitalized on this consumer demand for safe products, and consumers were willing to pay, and did pay, a premium for products they believed to be safe and of high quality.

20. Through its packaging, labeling, and marketing, Defendant consistently represents that its Products are safe and effective for their intended purposes. The one place every consumer looks when purchasing a product is its label. Defendant's labels, like the one for its "Renew SKIN REPAIR CREAM" depicted below, project a clinical, professional, and safe image. The labels provide a detailed list of "Active" and "Inactive Ingredients," leading a reasonable consumer to believe that all ingredients are disclosed and that the product is safe for use.

\\ \\

\\ \\

\\ \\

\\ \\

\\ \\

\\ \\

\\ \\




21. As a result of Defendant's branding and marketing, consumers like Plaintiff reasonably trusted DermaRite to sell products that were safe, effective, and free from harmful substances. Consumers lack the scientific knowledge or ability to test products for microbial contamination at the point of sale and must rely on manufacturers like Defendant to be honest and transparent about their products' contents.

**II. The Products Are Contaminated and Unsafe for Their Intended Use**

22. Contrary to Defendant's representations of safety, the Products are dangerously defective because they are contaminated with, or at risk of being contaminated with, *Burkholderia cepacia* complex ("BCC").

23. According to the U.S. Centers for Disease Control and Prevention ("CDC"), BCC is a group of bacteria that can cause serious infections, including respiratory infections and bloodstream infections. The CDC warns that BCC poses a risk to hospitalized patients, individuals with weakened

immune systems, and those with chronic lung diseases, such as cystic fibrosis.[2] These are the very populations likely to use Defendant's skin care, wound care, and infection control Products.

24. The presence of BCC in products intended for application to the skin—and in many cases, to open wounds or compromised skin barriers—is unreasonably dangerous and renders the Products unsafe for their intended use.

25. Because the Products are contaminated with a dangerous bacterium that poses a risk of serious and life-threatening health consequences, the Products are unfit for their intended purpose, unsafe, and entirely worthless. Additionally, such contamination results in the Product being adulterated and being illegal to sell.

### III. DermaRite Knew or Should Have Known About the BCC Contamination

26. As a large, sophisticated manufacturer with over two decades of experience, DermaRite holds itself out as an expert in the field. DermaRite was in a unique and superior position of knowledge regarding the ingredients, raw materials, and manufacturing processes used for its Products. Defendant knew or should have known about the risk of BCC contamination in its Products, as such risks are well-known in the manufacturing of non-sterile, water-based products. Defendant had a duty to provide consumers with accurate information about the contents of its Products and to ensure its manufacturing processes prevented such contamination.

27. Upon information and belief, Defendant had actual or constructive knowledge of the BCC contamination in its Products long before it disclosed this fact to the public. This knowledge stemmed from, among other sources, internal quality control testing, raw material testing, and/or consumer complaints of adverse reactions or infections. Indeed, commonly accepted cosmetic manufacturing practices require that Defendant control and test for such contamination. Defendant is required to ensure that its equipment and storage of ingredients used in the production of the Products are appropriately handled to prevent contamination. For example, Defendant must make sure that raw materials and primary packaging materials are stored and handled in a manner which prevents contamination with microorganisms; materials are sampled and tested or examined in

[2] *See* CDC, *Burkholderia cepacia* Complex in Healthcare Settings, https://www.cdc.gov/b-cepacia/about/index.html.

conformance with procedures assuring the absence of contamination with filth, microorganisms, or other extraneous substances to the extent necessary to prevent adulteration of finished products; and equipment are well-maintained and clean and sanitized at appropriate intervals.

28. Despite this knowledge, Defendant continued to manufacture, market, and sell the contaminated Products to unsuspecting consumers in California and across the country, prioritizing its profits over consumer safety.

**IV. DermaRite Concealed the Contamination Through Deceptive Labeling and Omissions**

29. Defendant's marketing, advertising, packaging, and labeling for the Products are false, deceptive, and misleading because they omit the material fact that the Products contain, or are at risk of containing, BCC.

30. As shown in the representative example above, Defendant's product labels provide a detailed ingredient list but nowhere disclose the presence or risk of BCC. This omission creates the false impression that the Products are safe, sanitary, and free from harmful bacteria.

31. The presence of a dangerous contaminant like BCC is a material fact that a reasonable consumer would consider important to their decision to purchase the Products. Had Defendant disclosed the BCC contamination, Plaintiff and reasonable consumers would not have purchased the Products at all, or would have paid substantially less for them.

32. Defendant intentionally concealed and omitted this material information to induce Plaintiff and Class Members to purchase the Products and to pay the full retail price. Defendant knew that if it had disclosed the truth about the contamination, it would have lost sales and profits.

33. Therefore, Defendant's false, misleading, and deceptive omissions regarding the BCC contamination were likely to deceive, and did deceive, reasonable consumers, including Plaintiff and the members of the California Class.

**V. The Recall Was Untimely and Fails to Make Consumers Whole**

34. On or about August 8, 2025, Defendant issued a voluntary product recall. This was followed by an expanded nationwide recall announced via the U.S. Food and Drug Administration on August 27, 2025, due to potential BCC contamination.[3]

---

[3] *See* DermaRite Industries Expands Voluntary Nationwide Recall, U.S. FOOD & DRUG ADMIN.,

35. These recalls were untimely and occurred only after millions of units of the contaminated Products had already been sold to unsuspecting consumers throughout California and the United States, exposing them to potential harm.

36. Furthermore, the recall is an inadequate remedy. It fails to fully compensate consumers for their economic losses, as they are left with worthless and dangerous products they cannot use. The recall does not guarantee a full refund of the purchase price and fails to account for the time, effort, and expense consumers must undertake to participate in the recall.

37. Critically, the recall does nothing to compensate consumers for the health risks they were exposed to by using contaminated products intended for skin and wound care.

38. As a direct and proximate result of Defendant's deceptive and unlawful conduct, Plaintiff and the Class Members suffered economic injury. They were deprived of the benefit of their bargain because the Products they purchased are worthless, are of a different and lower quality than what Defendant represented, and have less value than what Defendant represented.

39. Plaintiff and the Class Members paid for safe and effective skin and wound care products but instead received products contaminated with a harmful bacterium. Consequently, the Products Plaintiff and Class Members received were worth substantially less than the Products for which they paid, if not entirely worthless.

## TOLLING OF THE STATUTES OF LIMITATIONS

40. Any applicable statutes of limitations are tolled by the discovery rule, the doctrine of fraudulent concealment, the continuing violation doctrine, and the doctrine of estoppel. Plaintiff and the Class could not have discovered Defendant's wrongdoing and the defect in the Products, and they were prevented from discovering this information by Defendant's deceptive practices and concealment.

### A. The Discovery Rule

41. Plaintiff and other Class Members could not have discovered through the exercise of reasonable diligence that their Products were defective and contaminated with BCC within the time

---

https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/dermarite-industries-expands-voluntary-nationwide-recall-due-potential-burkholderia-cepacia (last visited October 3, 2025).

period of any applicable statutes of limitation.

42. The contamination of the Products with BCC is a latent defect. It is a microbial contamination not visible to the naked eye and not discoverable through a consumer's reasonable inspection or normal use of the Products.

43. Plaintiff and the Class lack the meaningful ability, scientific knowledge, and resources to test or independently ascertain whether a skin care or wound care product contains a harmful microbial contaminant like BCC, especially at the point of sale. They must, and did, rely on Defendant's representations and omissions.

44. Because of Defendant's misrepresentation and material omissions, Plaintiff and Class Members did not discover, and could not have known, that the Products suffer from a defect that renders them worthless and poses safety risks through any reasonable and diligent investigation. There were no public disclosures regarding the presence of BCC in the Products prior to the Recall.

45. A factual basis for the causes of action alleged herein did not arise until Defendant's public announcements of its voluntary recall on August 8, 2025, and its expanded recall on August 27, 2025. It was only at this time that Plaintiff and the Class were first put on notice of the potential contamination and their resulting injuries. As such, under the discovery rule, the statutes of limitations did not begin to run until August 2025 at the earliest, and no potentially relevant statute of limitations should bar this action.

**B. Fraudulent Concealment**

46. Throughout the time period relevant to this action, any applicable statutes of limitations have been tolled by Defendant's knowing, active, and ongoing concealment and denial of the facts as alleged herein.

47. Defendant was, and is, under a continuous duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Products—particularly with respect to the Defect and attendant safety risks. This duty arose from Defendant's superior and exclusive knowledge of its manufacturing processes and quality control, as well as its explicit representations that the Products were safe for their intended use on human skin.

48. At all relevant times, Defendant knew or, in the exercise of reasonable care, should

have known that its Products were contaminated with BCC. Defendant's actual or constructive knowledge is evidenced by, among other things, the eventual Recall of the Products.

49. Despite this knowledge, Defendant knowingly, affirmatively, and actively misrepresented and concealed the true contaminated nature of the Products and sold them into the stream of commerce with the Material Omissions and Defect. The purpose of this concealment was to continue to profit from the sale of its Products and to prevent Plaintiff and other Class Members from seeking redress.

50. Plaintiff and the Class were kept ignorant by Defendant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. They justifiably relied on Defendant to disclose the true nature of the Products they purchased because the defect was not discoverable by them through reasonable efforts.

51. Accordingly, any applicable statutes of limitations have been tolled by Defendant's knowledge and active concealment of the facts alleged herein.

**C. Continuing Violation Doctrine**

52. Defendant has continuously marketed and sold the defective Products to unsuspecting consumers, including Plaintiff and the Class, throughout the Class Period.

53. Defendant continuously represented through its labeling and marketing that the Products are safe and suitable for their regular and intended use.

54. By continuously repeating its false representations and failing to disclose the material omissions—namely that the Products contain a uniform defect and were contaminated with BCC—Defendant engaged in a continuing wrong sufficient to toll any statute of limitations that Defendant might seek to apply.

**D. Estoppel**

55. Defendant was under a continuous duty to disclose to Plaintiff and other Class Members the facts it knew about the dangerously defective nature of the Products, namely the existence of the BCC contamination detailed above.

56. Defendant knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Products from Plaintiff and the Class. This concealment is ongoing to the extent

Defendant's Recall fails to adequately warn and compensate all affected consumers.

57. Because Defendant's own wrongful concealment is the reason for any delay in Plaintiff and the Class filing suit, it would be inequitable for Defendant to profit from its misconduct.

58. Thus, Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action pursuant to Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated. Plaintiff proposes to represent a class (the "California Class") defined as follows:

> All persons in the State of California who purchased the Products[1] for personal, family, or household use and not for resale, during the fullest period allowed by law (the "Class Period").

60. Excluded from the California Class are: (1) Defendant, its subsidiaries, parents, affiliates, officers, directors, and any entity in which Defendant has a controlling interest; (2) the legal representatives, successors, and assigns of Defendant; (3) all federal court judges and their staffs; and (4) counsel for the parties.

61. Plaintiff reserves the right to amend the Class definition or to propose subclasses if discovery and further investigation reveal that such amendment or proposal is warranted.

62. This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is ascertainable. The members of the Class are so numerous that joinder of all members is impracticable. The questions of law and fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

63. **Numerosity (Fed. R. Civ. P. 23(a)(1))**: The members of the California Class are so numerous that joinder of all members would be impracticable. On information and belief, Defendant is a major national manufacturer and distributor of skin and wound care products, and has sold thousands, if not tens of thousands, of units of the Products to consumers throughout the State of California. The precise number of Class Members is unknown to Plaintiff but may be readily

ascertained from Defendant's sales records and business documents.

64. **Commonality (Fed. R. Civ. P. 23(a)(2))**: There are questions of law and fact common to the claims of Plaintiff and the California Class, and these common questions predominate over any questions affecting only individual members of the Class. These common questions include, but are not limited to, the following:

a. Whether the Products were contaminated with or at risk of contamination with BCC;

b. Whether Defendant knew or should have known that the Products were contaminated or at risk of contamination;

c. Whether Defendant's failure to disclose the presence or risk of BCC in the Products constitutes a material omission;

d. Whether Defendant's representations that the Products were safe, and its omission of the BCC contamination, were false, misleading, and likely to deceive a reasonable consumer;

e. Whether Defendant's conduct constitutes an unfair, unlawful, or fraudulent business act or practice in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.;

f. Whether Defendant engaged in untrue or misleading advertising in violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.;

g. Whether Defendant violated California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*., by representing that the Products have characteristics or qualities which they do not have, and by representing that they are of a particular standard, quality, or grade, when they are of another;

h. Whether Plaintiff and the Class Members suffered injury in fact and lost money or property as a result of Defendant's unlawful conduct;

i. Whether Plaintiff and the Class Members are entitled to restitution, disgorgement, and/or damages, and the proper measure thereof; and

j. Whether Plaintiff and the Class Members are entitled to declaratory and injunctive relief.

65. **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiff's claims are typical of the claims of the other members of the California Class. Plaintiff, like all Class Members, purchased Defendant's Products in California for personal use and was exposed to Defendant's uniform marketing and labeling, which concealed the material fact of BCC contamination. Plaintiff, like all Class Members, was injured by the same wrongful course of conduct by Defendant and suffered the same economic injury—namely, purchasing worthless or diminished-value products. Plaintiff's claims and the claims of the Class Members all arise from the same factual and legal theories.

66. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**: Plaintiff will fairly and adequately protect the interests of the California Class. Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Class Members she seeks to represent. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel who are competent and experienced in prosecuting complex consumer class actions. Neither Plaintiff nor her counsel has any conflicts of interest that would interfere with their ability to represent the Class.

67. **Predominance (Fed. R. Civ. P. 23(b)(3))**: The common questions of law and fact enumerated above predominate over any questions affecting only individual members of the Class. The central issue in this litigation is whether Defendant engaged in a common course of conduct—deceptively marketing and selling contaminated products to all California consumers. The liability determination will be common to all Class Members and will not require individualized inquiries into each member's purchase. The damages to the Class can be calculated on a class-wide basis, such as through a full refund of the purchase price or the price premium paid for the worthless Products.

68. **Superiority (Fed. R. Civ. P. 23(b)(3))**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

a. The individual economic losses suffered by each Class Member are likely too small to make it practicable for them to pursue individual litigation, rendering a class action the only viable means for them to seek redress.

b. A class action will conserve judicial resources and promote efficiency by adjudicating the common claims of all Class Members in a single action, avoiding the burden of duplicative and potentially inconsistent rulings that would result from numerous

individual lawsuits.

c. The management of this action as a class action will not present any significant difficulties. The Class is readily definable, and there is no reason to believe that individual members have an interest in controlling the prosecution of separate actions.

69. **Injunctive Relief (Fed. R. Civ. P. 23(b)(2))**: Class certification is also appropriate under Rule 23(b)(2) because Defendant has acted on grounds that apply generally to the California Class, making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Plaintiff and the Class seek an order enjoining Defendant from continuing its unlawful conduct as alleged herein and requiring Defendant to take all necessary corrective actions to remedy its past deception. Such injunctive relief is necessary to protect the public from further harm.

**COUNT I**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIVIL CODE §§ 1750, ET SEQ.**
**(*On Behalf of Yolanda Pitre and the California Class*)**

70. Plaintiff Yolanda Pitre, individually and on behalf of the California Class, repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

71. This Count is brought on behalf of Plaintiff Pitre ("Plaintiff" for purposes of this Count) and the California Class ("Class" for the purposes of this Count) for violations of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

72. The Products at issue are "goods" within the meaning of Cal. Civ. Code § 1761(a).

73. Plaintiff and the members of the California Class are "consumers" within the meaning of Cal. Civ. Code § 1761(d) because they purchased the Products for personal, family, or household use.

74. Plaintiff and the members of the California Class engaged in "transactions" within the meaning of Cal. Civ. Code § 1761(e) when they purchased the Products.

75. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

76. In the course of its business, Defendant violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the safety, quality, and characteristics of the Products. Defendant represented its Products as safe for skin and wound care while failing to disclose that the Products were contaminated with, or at risk of contamination with, the dangerous *Burkholderia cepacia* complex ("BCC").

77. By engaging in the false, deceptive, and misleading labeling and marketing described herein, Defendant engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a): (i) Representing that the Products have characteristics, uses, and benefits that they do not have, namely that they are safe, sanitary, and fit for application to human skin and wounds. Cal. Civ. Code § 1770(a)(5); (ii) Representing that the Products are of a particular standard, quality, or grade when they are of another, namely by representing them as safe, high-quality healthcare products when they were in fact contaminated with a dangerous bacterium and unfit for their intended purpose. Cal. Civ. Code § 1770(a)(7); (iii) Advertising the Products with intent not to sell them as advertised, by advertising safe and effective skin and wound care products but selling products that were contaminated and unsafe. Cal. Civ. Code § 1770(a)(9); and (iv) Representing that the Products have been supplied in accordance with a previous representation when they have not. Cal. Civ. Code § 1770(a)(16).

78. Defendant's violations of the CLRA were willful and knowing. As a sophisticated manufacturer with over 25 years of experience, Defendant knew, or by the exercise of reasonable care, should have known that its Products were contaminated with BCC. Defendant possessed unique and superior knowledge of its raw materials and manufacturing processes, and the risks of microbial contamination associated with them. Despite this knowledge, Defendant misrepresented the safety of its Products and omitted the material fact of contamination in order to increase its profits at the expense of consumer safety.

79. Defendant's violations of the CLRA were further willful and knowing in its implementation of the untimely and inadequate Recall. The Recall came only after countless units of contaminated Products were sold and fails to fully compensate consumers for the economic harm they suffered. It does not provide a full refund for the worthless Products purchased and fails to

adequately notify all affected consumers of the risks. This inadequate response demonstrates Defendant's ongoing disregard for consumer rights and safety.

80. Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices impact the public interest because millions of consumers were injured in the same way by Defendant's common course of deceptive conduct.

81. Defendant's acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances to believe that the Products were safe and free from harmful contaminants.

82. Defendant's misrepresentations and omissions regarding the BCC contamination were material to Plaintiff's and the Class Members' decisions to purchase the Products. A reasonable consumer would attach importance to whether a skin or wound care product is contaminated with a dangerous bacterium.

83. Had Plaintiff and the members of the California Class known the truth about the Products' contamination, they would not have purchased them or would have paid substantially less for them.

84. Because of Defendant's unfair and deceptive conduct, Defendant was able to sell the Products and charge more for them than they were worth, as the contaminated Products are entirely worthless.

85. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and the members of the California Class suffered ascertainable loss and actual damages, in that they paid for Products that are worthless and cannot be used as intended. The damage sustained is the purchase price of the Products, or at a minimum the price premium paid for the Products.

86. Pursuant to Cal. Civ. Code § 1780(a)(2), Plaintiff and the Class seek an order enjoining Defendant from continuing to engage in the unlawful practices described herein. Plaintiff and the Class also seek injunctive relief requiring Defendant to engage in a corrective advertising campaign and to implement a new, adequate recall program that provides a full refund to all affected consumers.

87. Pursuant to Cal. Civ. Code § 1782(a), on or about November 12, 2025, Plaintiff sent a letter via certified mail to Defendant, providing notice of its violations of the CLRA and demanding

that Defendant correct such violations for all affected consumers. If Defendant fails to correct such violations, Plaintiff intends to amend her complaint thirty days after Defendant's receipt of the letter.

88. A CLRA venue declaration is attached.

**COUNT II**
**VIOLATION OF THE UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.**
**(*On Behalf of Yolanda Pitre and the California Class*)**

89. Plaintiff Yolanda Pitre, individually and on behalf of the California Class, repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

90. This Count is brought on behalf of Plaintiff Pitre ("Plaintiff" for purposes of this Count) and the California Class ("Class" for the purposes of this Count).

91. The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

92. **Unlawful Prong:** In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (as alleged in Count I), and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (as will be alleged in Count III).

93. Plaintiff, individually and on behalf of the other members of the Class, reserves the right to allege other violations of law which constitute other unlawful business acts or practices. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and the Class Members.

94. **Unfair Prong:** Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

95. Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in deceptive and false advertising, and misrepresented and omitted

material facts regarding the safety of its Products. Defendant's conduct offends the established public policy of ensuring that skin care, wound care, and infection control products sold to consumers are safe, sanitary, and free from harmful contamination. This conduct is immoral, unethical, oppressive, and unscrupulous, and is substantially injurious to consumers.

96. **Fraudulent Prong:** The UCL also prohibits any "fraudulent business act or practice." A business act or practice is fraudulent under the UCL if it is likely to deceive members of the public.

97. Defendant's actions, claims, nondisclosures, and misleading statements, as alleged herein, constitute "fraudulent" business practices in violation of the UCL because they are false, misleading, and/or likely to deceive reasonable consumers into believing that the Products are safe for their intended use on skin and wounds, when in fact they are contaminated with BCC.

98. Defendant's conduct was fraudulent because Defendant failed to disclose the BCC contamination defect associated with the Products. Specifically, Defendant failed to adequately warn Plaintiff and Class Members that the Products contained, or were at risk of containing, a dangerous bacterium that rendered them unsafe and worthless. As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and the Class Members.

99. Defendant's implementation of the Recall also violates the UCL. The Recall was untimely, occurring only after millions of units of contaminated Products had been sold to unsuspecting consumers. The Recall is also inadequate and ineffective because it fails to fully compensate consumers for the premium price they paid for products they believed were safe, fails to guarantee a full refund for the now-worthless Products, and fails to adequately reach and notify all affected consumers of the potential health risks.

100. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein, such as adequate quality control, transparent labeling, and a timely and comprehensive recall that fully compensated consumers.

101. Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful, unfair, and fraudulent acts and practices impact the public interest because Plaintiff and the Class Members were injured in the same way by Defendant's common

course of deceptive conduct.

102. Defendant's acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class.

103. Defendant's misrepresentations and omissions were material to Plaintiff and members of the Class, as a reasonable consumer would consider the presence of a dangerous bacterium in a skin or wound care product important to their purchasing decision.

104. All of the conduct alleged herein occurred in the course of Defendant's business and was part of a pattern or generalized course of illegal conduct that continues to this day.

105. As a result of their deception, Defendant has been able to reap unjust revenue and profit in violation of the UCL.

106. Had Plaintiff and the members of the Class known of Defendant's misrepresentations and deceptive acts and practices, including their omissions about the BCC contamination, they would not have purchased the Products or would have paid substantially less for them.

107. As a direct and proximate result of Defendant's conduct in violation of the UCL, Plaintiff and the members of the Class have suffered injury-in-fact and lost money or property, in that they paid for Products that are worthless and cannot be used as intended, and/or paid a price premium for the Products that they would not otherwise have paid.

108. Plaintiff and the Class Members do not have an adequate remedy at law because damages alone will not stop Defendant's deceptive practices. Only injunctive relief can prevent future harm to the public by compelling Defendant to cease its unlawful conduct and engage in corrective action.

109. Plaintiff and the Class Members seek restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**<u>COUNT III</u>**
**VIOLATION OF THE FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE §§ 17500, ET SEQ.**
**(*On Behalf of Yolanda Pitre and the California Class*)**

110. Plaintiff Yolanda Pitre, individually and on behalf of the California Class, repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

111. This Count is brought on behalf of Plaintiff Pitre ("Plaintiff" for purposes of this Count) and the California Class ("Class" for the purposes of this Count).

112. Defendant's conduct described herein constitutes deceptive and false advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

113. The FAL makes it "unlawful for any person . . . to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property or those services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

114. Defendant misrepresented, omitted, concealed, and failed to disclose material facts regarding the safety, quality, and characteristics of the Products, as detailed throughout this Complaint.

115. Defendant made or caused to be made and disseminated throughout California advertising, marketing materials, packaging, and labeling containing statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the Class Members.

116. Through its deceptive labeling and marketing, Defendant made representations to the public, including Plaintiff and the Class Members, about the safety and quality of the Products for use on skin and for wound care. These representations were false and misleading because the Products were contaminated with, or at risk of contamination with, the dangerous bacterium *Burkholderia cepacia* complex ("BCC"), rendering them unsafe for their intended use.

117. Defendant also made material omissions concerning the safety of the Products. Specifically, Defendant concealed and failed to disclose that the Products were contaminated with BCC. As a direct result of Defendant's material omissions, reasonable consumers, including Plaintiff, formed the mistaken belief that the Products were safe, sanitary, and fit for use when, in fact, they were not.

118. Because Defendant disseminated misleading information and omitted material information regarding the Products, and Defendant knew or should have known through the exercise of reasonable care that its representations and accompanying omissions were and continue to be misleading, Defendant has violated the FAL.

119. Defendant's misrepresentations, concealments, and omissions of material facts had the capacity to and did mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class Members, about the true safety, quality, and value of the Products.

120. Defendant's violations present a continuing risk to Plaintiff, the Class Members, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest and will continue to do so unless enjoined.

121. As a direct and proximate result of Plaintiff's and the Class Members' reliance on Defendant's false and misleading advertising, they suffered injury-in-fact and lost money or property by purchasing Products that were contaminated, unsafe, and worthless. Had Plaintiff and the Class Members known the truth, they would not have purchased the Products or would have paid substantially less for them.

122. Plaintiff and the Class Members do not have an adequate remedy at law because damages alone will not stop Defendant from continuing its misconduct. Plaintiff and the Class seek injunctive relief, including an order requiring Defendant to cease its deceptive practices, engage in a corrective advertising campaign to inform consumers of the truth about the contamination, and implement an adequate recall program that provides full refunds to all affected consumers.

123. Pursuant to the FAL, Plaintiff, on behalf of herself and the Class, seeks restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations

where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and other Class Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**COUNT IV**
**UNJUST ENRICHMENT/QUASI-CONTRACT**
**(*On Behalf of Yolanda Pitre and the California Class*)**

124. Plaintiff Yolanda Pitre, individually and on behalf of the California Class, repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

125. This Count is brought on behalf of Plaintiff Pitre ("Plaintiff" for purposes of this Count) and the California Class ("Class" for the purposes of this Count).

126. Through its deceptive labeling and marketing, Defendant made representations to the public, including Plaintiff and the Class Members, about the safety and quality of the Products for use on skin and for wound care. These representations were false and misleading because the Products were contaminated with, or at risk of contamination with, the dangerous bacterium Burkholderia cepacia complex ("BCC"), rendering them unsafe for their intended use.

127. Further, Defendant omitted, concealed, and failed to disclose to consumers that the Products pose serious safety risks to consumers, namely the risk of sepsis.

128. Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not how Defendant represented them to be and/or were illegal to sell.

129. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits they received from Plaintiff and the Class as the result of their deceptive marketing and advertising practices. Thus, it would be inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class.

**COUNT V**
**NEGLIGENT MISREPRESENTATION AND OMISSION**
**(*On Behalf of Yolanda Pitre and the California Class*)**

130. Plaintiff Yolanda Pitre, individually and on behalf of the California Class, repeats,

realleges, and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

131. This Count is brought on behalf of Plaintiff Pitre ("Plaintiff" for purposes of this Count) and the California Class ("Class" for the purposes of this Count).

132. As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning the statements made on the labeling, packaging, and marketing materials for its Products.

133. Defendant also omitted crucial information from its label, failing to disclose the danger of sepsis posed by BCC in the Products.

134. These representations were false.

135. When Defendant made these misrepresentations and omissions, it knew or should have known that the representations were false. Defendant had no reasonable grounds for believing that these representations were true when made.

136. Defendant intended that Plaintiff and class members rely on these representations and omissions.

137. In deciding to purchase Products from Defendant, Plaintiff and the class reasonably relied on Defendant's representations and omissions to form the mistaken belief that the Products were safe to use.

138. In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products

139. Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

## COUNT VI
## FRAUDULENT MISREPRESENTATION AND OMISSION
***(On behalf of Yolanda Pitre and the California Class)***

140. Plaintiff Yolanda Pitre, individually and on behalf of the California Class, repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

141. This Count is brought on behalf of Plaintiff Pitre ("Plaintiff" for purposes of this Count) and the California Class ("Class" for the purposes of this Count).

142. As alleged in detail above, Defendant made false representations to Plaintiff and class members concerning the statements made on the labeling, packaging, and marketing materials for its Products.

143. Defendant also omitted crucial information from its label, failing to disclose the danger of sepsis posed by BCC in the Products.

144. These representations and omissions were false.

145. Defendant made these representations and omissions willfully and knowingly throughout the entirety of its sale of the BCC contaminated Products.

146. Defendant's fraudulent conduct was knowing and intentional. The representations and omissions by Defendant were intended to induce and actually induced Plaintiff and the Class to purchase the Products. The Plaintiff would not have purchased the Products at the price she paid had she known of the BCC contamination. Class-wide reliance can be inferred because Defendant's representations and omissions were material, i.e., a reasonable consumer would consider them important to their purchase decision.

147. Defendant had a duty to disclose the defects and contamination because it had superior knowledge and access to facts about the defects, and instead made representations and omissions regarding their Products. A reasonable consumer could not have expected or known that the Products were defective or contaminated.

148. Plaintiff and Class members were injured as a direct and proximate result of Defendant's fraudulent omissions because (a) they did not receive the benefit of the bargain of their purchase because Defendant's representations and omissions hid the defects and risks from Plaintiff at the time of purchase; (b) they overpaid for the Products because they were sold at a price premium due to Defendant's false representations; and/or (c) they received Products that were worthless for their intended purpose. Plaintiff and the Class are entitled to damages and other legal and equitable relief as a result.

149. Defendant's acts were done maliciously, oppressively, deliberately, with intent to

defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yolanda Pitre, on behalf of herself and the California Class, respectfully prays for judgment against Defendant and the following relief:

A. An order certifying this action as a class action on behalf of the California Class defined herein, appointing Plaintiff Yolanda Pitre as Class Representative, and appointing her counsel as Class Counsel;

B. A judgment in favor of Plaintiff and the California Class on all counts;

C. A declaration that Defendant's actions, as described herein, violate California's Consumers Legal Remedies Act, Unfair Competition Law, and False Advertising Law;

D. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the California Class, including, but not limited to, an order:

i. Prohibiting and enjoining Defendant from continuing the unlawful, unfair, and fraudulent business practices and the false and misleading advertising described herein; and

ii. Requiring Defendant to engage in a corrective advertising campaign to inform consumers about the product contamination and to implement a new, adequate recall program that provides a full refund to all affected consumers;

E. An award to Plaintiff and the California Class of full restitution, and an order requiring Defendant to disgorge all profits and unjust enrichment that Defendant obtained as a result of its unlawful, unfair, and fraudulent business practices described herein;

F. An award to Plaintiff and the California Class of all actual damages, compensatory damages, statutory damages, and punitive damages, in an amount to be determined at trial;

G. An award of reasonable attorneys' fees and all costs and expenses of this suit;

H. An award of pre-judgment and post-judgment interest on any amounts awarded; and

I. Such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff Yolanda Pitre, on behalf of herself and the California Class, hereby demands a trial by jury on all claims and issues so triable.

Dated: November 14, 2025

**BRYSON HARRIS SUCIU & DEMAY, PLLC**

*/s/ Trenton R. Kashima*
Trenton R. Kashima (CA SBN No. 291405)
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389
tkashima@bryson.com

Nick Suciu*
**BRYSON HARRIS SUCIU & DEMAY, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@bryson.com

Zachary Arbitman*
George Donnelly*
Nicole Maruzzi*
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
zarbitman@feldmanshepherd.com
gdonnelly@feldmanshepherd.com
nmaruzzi@feldmanshepherd.com

*Attorneys for Plaintiff and the Proposed California Class*

**Pro hac vice forthcoming*